IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

INSIGHTS TRADING GROUP, LLC,

    Plaintiff,

      v.

FEDERAL INSURANCE COMPANY,

    Defendant.

                          Civil Action No.: RDB-10-340

## **MEMORANDUM OPINION**

Plaintiff Insights Training Group, LLC ("Insights"), has filed this action seeking a declaration that it is entitled to coverage under certain insurance policies it purchased from Defendant Federal Insurance Company ("Defendant" or "Federal"). It is alleged that Federal has a duty to defend and indemnify Insights in a separate lawsuit that was brought in the Circuit Court for Baltimore County. Federal has moved this Court to dismiss the present action for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The parties' submissions have been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2009). For the reasons stated below, Defendant's Motion to Dismiss (Paper No. 8) is GRANTED.

## **BACKGROUND**

Plaintiff Insights Training Group, LLC ("Plaintiff" or "Insights"), is a Maryland company that provides outreach and admissions services for the U.S. Department of Labor's Office of Job Corps. Compl. for Decl. J. ¶ 2. Insights was named as a defendant in a civil action filed in state

court on behalf of G.D., a minor, seeking damages for injuries allegedly sustained after a sexual assault (the "underlying case").[1]  *Id.* ¶ 4.

According to the Complaint filed in the underlying case, Insights served as an outreach and admissions contractor for a company named Adams & Associates, Inc., which operates various Job Corps centers throughout the United States, including the Woodstock Job Corps Center in Woodstock, Maryland.  *See* G.D. Complaint ¶¶ 2, 7.  After meeting with representatives from both Adams & Associates and Insights, G.D. enrolled in the Woodstock Job Corps Program in January of 2008 to obtain a GED and training in the culinary arts.  *Id.* ¶ 8.  It is alleged that on or about April 12, 2008, G.D. was raped by another enrollee in the program named Jason Lettley ("Lettley") in a dormitory at the Jobs Center.  *Id.* ¶ 10.  G.D. filed suit in the Circuit Court for Baltimore County against Lettley for battery (*id.* ¶ 20-22) and against Adams & Associates for negligence and a violation of the Maryland Consumer Protection Act (*id.* ¶¶ 12-19).  In addition, G.D. sued Insights for constructive fraud (*id.* ¶¶ 23-25) for allegedly misrepresenting that the Woodstock Job Corps facility was a safe and protected environment and for failing to disclose that a rape had occurred in October 2006 at the facility.  *Id.* ¶ 24.  G.D. alleges that he was sexually assaulted as a result of Insights' misrepresentations and he seeks damages in the state action against Insights in the amount of $750,000.  *Id.* ¶ 25.

During the pendency of the underlying case, Insights filed a Complaint for Declaratory Judgment against Defendant Federal Insurance Company in the Circuit Court for Baltimore County, Maryland.  On February 16, 2010, that Declaratory Judgment action was removed to this Court on the grounds of diversity jurisdiction.[2]  (Paper No. 1.)

---

[1] Abbreviations are used herein because the underlying lawsuit contains allegations concerning a minor.

[2] According to Defendant Federal Insurance Company's Petition for Removal under 28 U.S.C. § 1441(a) (Paper No. 1), for purposes of diversity jurisdiction, Insights is a citizen of Maryland and

In the instant proceeding, Insights seeks a declaration that its insurer, Defendant Federal Insurance Company ("Defendant" or "Federal"), is required to defend and indemnify Insights in the underlying lawsuit pursuant to two insurance policies that provide general liability and errors or omissions liability coverage (the "policies"). *See* G.D. Complaint ¶¶ 2, 11. On February 23, 2010, Federal filed the pending Motion to Dismiss (Paper No. 8). Federal notes that both of the policies contain clauses that specifically exclude coverage for claims "arising out of" sexual abuse or molestation, and that it is accordingly relieved of any duty to defend or indemnify Insights.

**STANDARD OF REVIEW**

This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, as there is no dispute that the parties are citizens of different states and the initial matter in controversy exceeds $75,000. Nevertheless, federal courts have discretion to decline to exercise jurisdiction over a declaratory judgment action pursuant to the Federal Declaratory Judgment Act ("the Act"), 28 U.S.C. § 2201 and Fed. R. Civ. P. 57. Specifically, the Act provides in part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). This Court will exercise jurisdiction over this declaratory judgment action, as a ruling here will serve to clarify and settle the legal relations between the respective parties. *See Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) ("a declaratory judgment action is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding") (citations and internal quotation

---

Pennsylvania, while Federal is a citizen of Indiana and New Jersey. Diversity jurisdiction is not contested in this action.

3

marks omitted). On the other hand, this Court's resolution of the contractual coverage issue will not impinge on any substantial state interest and will not pose a significant danger of entanglement with the underlying state case. *Id.* at 412-14 (citing *Nautilus Insurance Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376-77 (4th Cir. 1994)).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, a Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Thus, a court considering a motion to dismiss "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Well-pleaded factual allegations contained in the complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference. *See Twombly*, 550 U.S. at 570 (stating that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (citations omitted)). Thus, even though Rule 8(a)(2) "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950.

To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has explained recently that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 129 S. Ct. at 1949. The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1937. Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.*

## DISCUSSION

### I. Choice of Law

As a preliminary matter, a determination must be made as to which state's substantive law should apply in interpreting the policies. Federal presses for the application of Pennsylvania law, whereas Insights contends that the policies are governed by Maryland law. Because this action was removed from Maryland state court on diversity grounds, Maryland's choice of law provisions apply. *See Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) ("A federal court hearing a diversity claim must apply the choice-of-law rules of the state in which it sits.").

Maryland generally adheres to the rule of *lex loci contractus*, under which the construction of a contract is determined by the law of the state where the contract was made. *Allstate Ins. Co. v. Hart*, 327 Md. 526, 529, 611 A.2d 100 (1992). A contract is generally

5

deemed to be "made" in the state where the "last act necessary" to form the contract took place. *Rouse Co. v. Fed. Ins. Co.*, 991 F. Supp. 460, 462 (D. Md. 1998). Normally, "[t]he *locus contractu* of an insurance policy is the state in which the policy is delivered and the premiums are paid." *Aetna Casualty & Sur. Co. v. Souras*, 78 Md. App. 71, 77, 552 A.2d 908 (1989).

In addition, Maryland choice-of-law rules follow, under certain limited circumstances, the *renvoi* doctrine. Under this exception, a Maryland court may "disregard the rule of *lex loci contractus* and apply Maryland law, if: (1) Maryland has a substantial relationship to the contractual issue presented; and (2) the foreign jurisdiction whose law of contract interpretation would ordinarily apply under Maryland's *lex loci* principle would, under the foreign jurisdiction's own choice of laws principles, apply Maryland law." *Rouse*, 991 F. Supp. at 463 (citing *American Motorists Ins. Co. v. ARTA Group, Inc.*, 338 Md. 560, 570, 659 A.2d 1295 (1995)).

Federal's arguments in support of the application of Pennsylvania law are unavailing. Its claim that Insights' headquarters was located in Pennsylvania as of October 1, 2007, (the effective date of the policies) is not substantiated by the record. Federal notes that subsequent endorsements to the insurance policies corrected the insured's mailing address to be Benton, Pennsylvania. Def.'s Ex. B, at 4; Def.'s Ex. C, at 4. However, these exhibits merely reflect that there was a change of mailing address made several months after the insurance contracts became binding—an observation that has no bearing upon the choice of law analysis. For its part, Insights claims that it never moved its headquarters to Pennsylvania and that it merely had a billing and finance office in Pennsylvania at the time of the October 1, 2007, effective date. Pl.'s Opp. at 18.

Insights has submitted exhibits showing that the policies were delivered to Insights' agent/broker, Schirick & Associates Insurance Brokers, Inc. ("Schirick"), in New York and that Insights made its premium payment to Schirick in New York. *See* Pl.'s Exs. B & C. Based upon this showing, this Court determines that the *locus contractu* of the insurance policies is New York. *See Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 698 A.2d 1167 (1996) (finding an insurance contact to be finalized in the state where the insurance policies were delivered to defendant's insurance broker).

In addressing the associated question of whether the *renvoi* exception should apply, this Court notes that the State of Maryland clearly has a strong, or at least substantial, connection to the present case. Insights is a Maryland limited liability company and the policies in question are based upon Maryland ratings. Pl.'s Ex. A, at 2. The underlying lawsuit, which relates to events that occurred in Maryland, was instituted in Maryland state court. In addition, pursuant to the second prong of the *renvoi* analysis, New York choice of law rules would prescribe Maryland substantive law to resolve the present issue. In *Commercial Union*, the Maryland Court of Special Appeals noted that New York follows the Second Restatement of Conflict of Laws, which instructs courts to turn to the state with "the most significant relationship to the transaction and the parties" and "which the parties understood was to be the principal location of the insured risk." *See* Restatement (Second) of Conflict of Laws §§ 188[1], 193. Therefore, the rule of *renvoi* properly applies in this case and instructs this Court to apply Maryland law in addressing the issue of whether Federal has a duty to defend or indemnify Insights in the underlying lawsuit.

**II.     Whether Federal Has a Duty to Defend or Indemnify Insights under the Policies**

Insights purchased two insurance policies from Federal: (1) a Customarq Classic Commercial Insurance Policy, policy number 7985-07-55 EUC (the "Primary Policy"); and (2) a

Commercial Excess and Umbrella Insurance Policy, policy number 7985-07-57 EUC (the "Excess Policy"). Compl. for Decl. J. ¶ 3. These policies provide coverage for "general liability" and "errors or omissions liability" for the period of October 1, 2007, to October 1, 2008. *Id.* Each of the policies also contains the following exclusion clause, entitled, "Abuse or Molestation, Total":

> With respect to all coverage(s) under this contract, this insurance does not apply to any damages, loss, cost or expense *arising out of* any:
> A. actual or threatened abuse or molestation by anyone of any person; or
> B. 1. employment, investigation, retention or supervision; or
>    2. reporting to or failure to report to the proper authorities;
>
> Of any person for whom any insured is or ever was legally responsible and whose conduct would be excluded by subparagraph A. above.

Def.'s Ex. B, at 7; Def.'s Ex. C, at 3 (emphasis added). The interpretive issue in this case focuses upon the construal of the phrase "arising out of" in the exclusion clauses.

When addressing exclusion clauses, courts applying Maryland law are advised that the "words 'arising out of' must be afforded their common understanding, namely, to mean originating from, growing out of, flowing from, or like." *Northern Assurance Co. v. EDP Floors, Inc.*, 311 Md. 217, 230, 533 A.2d 682 (1987); *see also Mass Transit Admin. v. CSX Transp., Inc.*, 349 Md. 299, 311, 708 A.2d 298 (1998). Thus, the phrase "arising out of" is broadly construed and exclusion clauses bearing the phrase are generally deemed to be triggered upon a showing of "but for" causation. *Beretta U.S.A. Corp. v. Federal Ins. Co.*, 17 Fed. Appx. 250, 253-54 (4th Cir. 2001). As a result, courts do not require a showing that the excluded conduct be "the sole 'arising out of' cause of the injury; they require only that the injury arise out of the [excluded conduct]." *EDP Floors*, 311 Md. at 230.

"When, as here, there is no ambiguity in the policy exclusion, the first principle of construction of insurance policies in Maryland requires that [courts] apply the terms of the

8

contract as written." *Id.* at 231.  In this case, the alleged rape of G.D. was the "but for" cause of his injuries, which gave rise to the underlying case and this related lawsuit for insurance coverage.  Accordingly, this Court finds that the exclusion clauses must be applied to bar Insights' entitlement to coverage under the present circumstances.

Insights contends that the clause should not be triggered because G.D.'s injuries arose, in part, from the fact that Insights knew, and yet failed to warn him, that the job training facility was unsafe.  However, this line of argument disregards the broad interpretive approach that must be employed under Maryland law.  Courts have found that litigants cannot skirt around an exclusion clause merely by relying upon certain alternative theories; indeed, an exclusion clause must apply "irrespective of the theory of liability by which the [the claimant] seeks redress for his injury, as the ['arising out of'] policy exclusion is not concerned with theories of liability." *EDP Floors*, 311 Md. at 230.  The Maryland Court of Appeals has noted that while an injury may "have arisen out of other causes further back in the sequence of events," the reviewing court's inquiry must focus only on "the instrumentality of the injury." *Id.*  In this case, the alleged sexual assault was the "instrumentality" and the "but for cause" of the injury, therefore the exclusion must apply regardless of any supplemental causes or theories that may be cited in the underlying case.

Finally, Insights emphasizes that the fundamental purpose behind the insurance policies at issue in this case is to provide robust and complete coverage for any errors or omissions that could arise from the provision of professional services.  Thus, Insights states that it developed a "reasonable expectation that its services and any representations or warranties made with respect to the fitness, performance, quality or use of its service and/or the providing of or failure to

provide instructions or warnings in connection with its service was covered under the Errors or Omissions policy." Pl.'s Opp. at 17.

However, this Court finds that it was not reasonable for Insights to bear the expectation that it would automatically receive coverage under the policies for each and every error or omission committed through the provision of its services. The policies generally provide coverage but also include policy exclusions that exempt coverage for losses arising from "actual or threatened abuse or molestation." Def.'s Ex. B, at 7; Def.'s Ex. C, at 3. Insights is a sophisticated party that clearly had notice of the plain language of the exclusion clauses, which specifically and narrowly exclude coverage for injuries arising from the alleged conduct at issue in the underlying lawsuit. *See Monticello Ins. Co. v. Kentucky River Community Care*, 1999 U.S. App. LEXIS 7487, at *10 (6th Cir. Apr. 14, 1999) (finding that an insurance policy's clause excluding coverage for sexual abuse comported with public policy and was otherwise enforceable because it was "sensible, routine, unambiguous, and specific"); *Rodco Worldwide, Inc. v. Arch Specialty Ins. Co.*, 306 Fed. Appx. 111, 116 (5th Cir. 2009) (upholding "arising out of" exclusion clause, which "like all policy exclusions—creates a 'potential gap,' but it leaves intact substantial coverage for 'negligence . . . in the rendering or failure to render professional services'").

## CONCLUSION

For the reasons stated above, this Court concludes that the insurance policies in this case exclude coverage for the claim asserted against Insights in the underlying case and Federal is not charged with any duty to defend or indemnify Insights. Accordingly, Defendant's Motion to Dismiss (Paper No. 8) is GRANTED, and this action is DISMISSED WITH PREJUDICE. A separate Order follows.

Date : July 7, 2010          /s/_____
                             Richard D. Bennett
                             United States District Judge